I think James Pike should be here for the appellants, Bridges and Dodson, and George Metz. Let's see, for George Metz we've got Cooper Moran and Camden Neal. We may begin May it please the Court, I'm Jim Pike and it's my pleasure to represent Dothan police officers David Bridges and Justin Dodson in this appeal from the denial of qualified immunity. The officers bring this appeal to enforce their right to qualified immunity for Officer Bridges' detention of Mr. Metz inside the Alabama Department of Human Resources building in Dothan and for Officer Dodson's search of Mr. Metz. Hey, would you just hang on one second? There's some seats up here in the front row if you want to come to the front row. There's kind of a traffic jam at the door back there. And against this wall. Yeah, some seats over here against this wall. Thanks. All right, we're going to start the clock all over again. May it please the Court, Officer Bridges and Dodson challenged the District Court's denial of qualified immunity to Officer Bridges on Mr. Metz's claim that Officer Bridges unlawfully detained and falsely arrested him inside the Alabama Department of Human Resources office in Dothan and that Officer Dodson unlawfully searched him incident to arrest after a probable cause arose for an arrest. I plan to address the arguable reasonable suspicion standard as Officer Bridges, the development of arguable probable cause for an arrest and the search after arguable probable cause developed. I want to emphasize, though, the standard to deny qualified immunity in this circuit. It's Mr. Metz that has the burden to establish through controlling precedent that no reasonable officer could have believed that a detention and a search were lawful in circumstances like these. Mr. Metz has to point to U.S. Supreme Court opinion, a published opinion by this court or an Alabama Supreme Court opinion that put these officers on notice that they could not engage, they could not take the actions that they took in a situation like this. We contend that the plaintiff cannot carry that high burden. First, arguable reasonable suspicion for Officer Bridges to detain Mr. Metz. Officer Bridges was dispatched to a call asking... Let me ask you this, so just to go to the point of it. So, you argue that he had reasonable suspicion to detain because of criminal trespass, right? Criminal trespass, casing the building, filming inside a sensitive building that investigates serious crimes. He made a reference to bolt action news, which is... Wait, when did he make a reference to that? Oh, the news. He said he was part of the news. He said bolt action news. So, if someone says they're a newspaper reporter, then that gives you reasonable suspicion to detain them? No, sir. Okay, but bolt action you think is like a gun or something, so that's what... That's what that's referring to. Let's just assume that the question is whether he had reasonable suspicion for criminal trespass, because none of those other things are violations of law as far as I'm aware. The magistrate judge said the one problem with that is that there's no evidence on the video that the officer was ever told that Metz was asked to leave. What do you say about that? There's no evidence on the video that Officer Bridges was told that Metz was asked to leave before Officer Bridges handcuffed Metz. He was told at some point before the search. Yeah, well, I mean, that's my point. So, do you agree with that, that there's no evidence in the video that the officer knew that they had requested that this person leave the premises? There's no evidence in the video of that before the handcuffs went on. That's correct. That would have given him probable cause for an arrest. Well, how does he have reasonable suspicion for criminal trespass when the law says that the only way you can commit criminal trespass in a public place is if you're defying a lawful order not to enter or remain? Well, sure, because he doesn't... First, he doesn't even need reasonable suspicion. He needs arguable reasonable suspicion.  All right, people normally don't call the police on folks that are inside their building if they're wanted. Their presence there is welcome. Okay, so at the very least, I just find it impossible to believe that no reasonable officer, and that's our standard, no reasonable officer could even suspect that these men were trespassing. When the police have been called on them, you arrive at the office. They're obviously not there for services. They're obviously filming this secure guarded area that has a security guard. But an experienced police officer couldn't even suspect that maybe they asked them to leave before they called the police on them. He's entitled to detain. They're two men, right? We talk about how the law treats conspiracy because two people are more dangerous than one. He's entitled to detain them while he gets to the bottom of this. He was detained, but he was never... Metz was never arrested, was he? He was just issued a trespass warning. I think he was arrested. I think he was. I thought Dodson told Metz he'd reached a, quote, decisive conclusion, close quote, to issue a trespass warning and that he would not be arrested. He did not say he would not be arrested. I want to break that up in two points. Did he say he was just going to issue him a trespass warning? No, sir. Let me address two points. Number one is you're going into subjective standard of the officer when it's an objective standard. But number two, to your point, if you watch this video carefully, the sergeant is saying that we can ban them and if they don't leave, they can go to jail. Okay? And he says that twice. There's the cameras muted. The officer walks out there. This is Dodson. He demands their ID to do the paperwork for the band. Okay, the sergeant's already said, you know, if this band doesn't work out, they're going to go to jail. He's told the DHR people that on this video, and I can give you the times if you want them. So Dodson is asking for ID. They don't cooperate with ID. Dodson made a decision at that point. They're going to jail. Yeah, well, that's clearly a crime, right? If the officer has reasons for suspicion and then asks you to ID yourself and you refuse, then that's a crime, right? And I don't think they even dispute that. They dispute whether it was a lawful demand. But by the time all this was happening, DHR staffs already told him the guard told him to leave and he didn't. So Dodson didn't even engage with these guys until DHR had said out loud our guard told them to leave and they refused. Could you go into the... So I'll just say, I mean, I tend to agree that this is an arrest because they put him in handcuffs. They told him he couldn't go anywhere. But could you just address that? Why is the fact that they didn't continue the arrest after they put him in handcuffs? They eventually let them go. Why is that not dispositive as to whether they were arrested? Well, because you have circumstances totally beyond the officer's control. You've got a lieutenant who's off-site who basically un-arrests him with an order after the search is already conducted. Right. And we don't hold a lawyer, I mean, an officer liable for something that you can't retroactively... Right. So that's a good way to put it. They were arrested and then they were un-arrested. Right. Right. And I want to point something out for Judge Wilson. If you go to Sergeant Evans' video at 3630, it's hard to make out because somebody talks over Dodson. But you'll hear Evans say, lieutenant, is basically saying we can't ban them. And Dodson says, well, I already searched them. And if you hear, you'll hear jail and OGO when they refuse to identify. Dodson is basically saying it's real hard to make out. And I can give you my interpretation. But he's basically saying I've already stood both of them up and searched them for ID because when they refuse to identify themselves for the report, they go to jail for OGO. So I think, you know, there's some evidence of his subjective intent, even if that's... I don't think it's relevant. I think it's what a reasonable officer could have done. I'd also like to go back to... Judge Brasher, respectfully, you minimized the casting aspect. Wasn't Metz told that he wasn't going to be arrested and taken into custody? He wasn't told he was going to be arrested. He was told they were going to ban him. And what Sergeant Evans says is we can... Ban him from being there in the lobby of this place. He says we can tell him to leave. So he was free to go? No, sir. He wasn't free to go? They're entitled to know these guys that have committed this crime. We're at a point where they have probable cause for trespassing. They told him you're not going to be arrested. The only thing... No, sir. They told him they were going to issue a trespass warning. And if they don't arrest, if they don't leave, they're going to jail. This is still very much an open question. They don't tell Metz if you don't leave, you're going to jail. But Evans is saying that we can trespass them if they refuse to leave. We can arrest them if they refuse to give ID. They can be arrested for obstructing to. That's the plan. And if you watch carefully, Dodson walks out there to execute that plan with Evans following him. This is on Evans' video. That Evans gets a phone call from Lieutenant Mock at 1613 that changes everything. Evans turns around. Dodson goes on in and executes the plan, okay, which includes a potential arrest. Evans is walking back. He answers the phone. He tells the lieutenant if they refuse to leave, we're going to arrest them for trespassing. There's a sign on the door requiring them to ID. That's the call. The lieutenant changes the plan. But Dodson is not part of that call. And he's going ahead and proceeding as if these guys don't do what we're telling them to do, we're going to take them to jail. And the guys don't cooperate. So Dodson makes up his mind that he can do a search incident to arrest. And then he walks back in the back. So if you don't leave, you're going to be arrested? I don't think he ever actually told them that. He didn't tell them what his plan was. He said, other than you're going to be banned and I need your information. Because it was still, like I said, an open. I'm talking about Dodson. Right, right. He didn't tell them. He said, we've reached a conclusion. He didn't say what the conclusion was. And in Dodson's mind, if these guys don't cooperate with what we're about to do, document who they are, document the ban, then they're going to be arrested. And that's what he tells Evans after Evans delivers the news, that while you're out there doing what we plan to do. That's a threat then to arrest in the future. There's a difference between if you don't leave, we're going to arrest you, and you are going to be arrested. It's we haven't reached a decision on how this is going to. There was no finality to it because it depended on whether Mets complied with the orders to identify him. He had probable cause already. So he's entitled to hold him. Yeah, Bridges, I may agree with you that Bridges had at least arguable, reasonable suspicion to detain him and conduct the search or whatever. My more concern is with respect to Dodson and whether or not Mets was free to leave when Dodson put the handcuffs on him. Dodson didn't handcuff him. Bridges handcuffed him. You're saying was Mets free to leave when the search was conducted. He absolutely was not. They're still investigating. DHR could have gone and gotten a warrant after the officers left. They're entitled to do a report and identify who the offender is for the report. And they're conducting this investigation of this crime. And furthermore, I want to point out, there is no clearly established law that says you have to have an actual arrest for a search incident to arrest to be valid. Once probable cause for an arrest arises, they don't cite a case that actually addressed facts like this and held there's no probable cause. There's a case law that says you have to have, that you can search incident to an arrest. There's a case law that says you can search before the formal arrest announcement. There's no case law that says if that formal announcement ever comes, no controlling precedent.  I guess you would agree this started as a Terry stop, right? I mean, that's the way it started. Yes, sir. And so, when do you think it transformed into an arrest? So, I think in Officer Dodson's mind, when they refused to cooperate, you know, the moment right before he reached into their pockets is he's decided these guys are going to jail. And when did he put, just refresh my, so he shows up, I mean, it's a very brief time, he shows up, he says, what are you guys doing here? And they sort of ignore him and then he asks them to identify themselves and they decline. And then that's when he puts them in handcuffs? That's right. He handcuffs them after they disobeyed his orders to provide their identification or their information or their name. And when they refused to obey those lawful orders, he had probable cause for an arrest there under that ordinance.  If he had reasonable suspicion for them to have done a crime, then under the law, he has the right to ask them to identify themselves. And it was absolutely, it was clear they violated that law if he had reasonable suspicion. The Supreme Court found actual reasonable suspicion when the house guy did it and Terry was looking in the window. Nobody would call the police on him and he didn't even go in the building. Yeah, I guess the difference between this situation and, like, the sort of the casing, the joint situation, is they're standing in the lobby of a public building recording, like, the bulletin boards. I mean, there's nothing even in DHR to steal. Like, I just, I mean, I don't understand how a reasonable officer could be like, you know, they're up to something nefarious in the sense of some kind of unknown criminal activity because they're standing in a public lobby filming stuff. I think the public is an incorrect use of the term in this context. This is a lobby that's reserved for people who seek DHR services, people who have been victims of child abuse, elder abuse, you know, sexually assault against disabled people, people who are applying for services. This is not a place for the general public to come in. There's a guard there. There's an ID requirement on the door. This is a secure facility that they've come up in and videoing. We don't know if they're waiting for a client to come in who's a relative who's been abused or a DHR worker who they may attack. I mean, I've cited, what, eight cases about casing. There's also a case, this Williamson v. Mills or Williams v. Mills published opinion by this court where the guy was photographing undercover officers at a rally in Florida and this court found no probable cause to arrest. But this court specifically said there was reasonable suspicion in that case for just taking pictures out in public of undercover police officers, 65 F3rd 155 at page 158, Williamson v. Mills. All right. Mr. Pike, you've reserved some time for rebuttal. Thank you. Mr. Moran. May it please the court. My name is Cooper Moran and I, alongside my co-counsel, Ms. Camden Neal, represent George Metz, the appellee in this case. Your Honor, I will be addressing Officer Bridges' illegal seizure and my co-counsel will be addressing Officer Dodson's illegal search. And, Your Honors, the officers elected to bring their qualified immunity defense at the motion to dismiss stage. And so considering only facts pled in the complaint and evidence shown in the video as to what Officer Bridges knew at the time of the seizure, he violated clearly established law when he seized Metz without arguable reasonable suspicion because there was no nexus between Metz's purely legal conduct and any crime. Your Honor, the reasonable suspicion must be measured at the time of the seizure. And Officer Bridges entered the DHR building and handcuffed Mr. Metz within 70 seconds of entering the building. And in those 70 seconds, he only saw three things that could factor into the reasonable suspicion standard. Wasn't he asked to leave nine times, though? Yes, Your Honor. He was asked to leave, but that was well before Officer Bridges ever arrived on scene. And Officer Bridges had no knowledge of that. And I think that's the heart, Judge Brasher, of your questioning about trespassing. Let's go back to assuming we disagree with you on that. If Officer Bridges had been told before he entered the building that they'd been asked to leave seven times and hadn't left, different case? Yes, Your Honor. Different result? Yes, Your Honor. But you would concede that if that information is imputed to the officer, you lose? Well, Your Honor, I don't think that information is imputed. I didn't ask you that. It's called a hypothetical. If that information had been imputed, had been transferred, or we imputed to the officer, then you lose, correct? Yes, Your Honor. If Officer Bridges knew that Metz had been asked to leave, given a lawful order to leave, and he refused, he would have arguable reasonable suspicion. Yeah, you put a condition in there that wasn't part of my statement, and that is lawfully asked to leave. You don't dispute that asking him seven times to identify himself. Well, Your Honor, the Alabama trespassing statute requires it be personally communicated by him by the owner of such authorized person. So assuming the security guard is an authorized person, yes, Your Honor, I would concede that. The magistrate judge in his report and recommendation did not take any opinion as to whether the security guard was an authorized person. But because this is a public building, Officer Bridges needed reasonable suspicion that Metz had been asked to leave, and that is not in the record at this stage. The officers argued for the collective knowledge doctrine, but that does not apply for several reasons. First, in all of the cases that the officers cite for the collective knowledge doctrine, it is known what was said to the 911 dispatcher and what the 911 dispatcher said to the individual. They distilled the facts down because at the heart of the collective knowledge doctrine, there must be some form of communication. The collective knowledge doctrine is not about magically telegraphing information. It is if law enforcement officers are involved. The question is whether the security guard can be treated as a law enforcement officer. The fact that someone saw the defendant commit a crime and then the later officer pull him over, that's commuted, imputed to the second officer. Yes, Your Honor. I think in the case that there is some form of communication that he saw something. No, no. Officer pulls him over, period. Well, Your Honor, and to your point, I don't think the security guard is a law enforcement officer in this circumstance. And so that's another reason why the security guard's knowledge cannot be imputed. What about the argument that sort of without any identifying any specific crime, just obviously there was a call to 911, that there was some suspicious activity going on in this lobby, and the police officers show up in response to the 911 call. Isn't that enough to give them reasonable suspicion? I mean, this is not, for example, a situation where the cops are just rolling down the street and they see somebody. Then you might want to say, okay, why exactly did you pick that person? Now, here they're clearly responding to a 911 call. Why can't they do something about that? Yes, Your Honor. The 911 call, the presence of a 911 call alone is not dispositive. In fact, this court in United States v. Holloway said that a 911 call alone does not indicate general criminal behavior. And so the individual that called 911 could have said any number of reasons. They could have just said, there's someone filming here. Will you please send an officer? And that would not give rise to reasonable suspicion for trespass because, again, the Alabama law on trespassing requires that an individual defy the order to leave. So Officer Bridges needed to know or have reasonable suspicion to know that Mr. Metz had been asked to leave. And he didn't know that. And when he walked in the DHR, he only learned that they had been filming because they were a part of a news group, that Mr. Metz was standing there peacefully in the lobby, and that he refused to provide his identification. None of that gives rise to trespass. It also doesn't give rise to casing the joint or filming confidential information, which it's unclear, as we pointed out in our Rule 28J letter, that those issues are properly before the court. But even if they are, there's still no reasonable suspicion for those crimes either. Because for casing the joint, there needed to be a nexus between the behavior and the crime. In some of the cases that the officers rely on, including Turner v. Lieutenant Driver from the Fifth Circuit, the nexus is an officer's prior experience or knowledge of other similar circumstances. So in Turner, the officers had knowledge of recent police attacks, and so that gave them reasonable suspicion when they saw an individual filming the police station because they knew of those attacks against police officers. But because the officers elected to bring this defense at the motion-to-dismiss stage, that evidence is not in this record. And so there is no nexus between the purely legal conduct of standing in a public lobby, which it is. There is no statute that limits who can enter this DHR lobby. There is no restriction on who can enter the lobby. Or at least it's certainly not in the record. Let me ask you to address a broader question. So under qualified immunity, you have to establish that they violated clearly established law. What is your theory for the violation of clearly established law here? Your Honor, I believe two main principles. First comes from this Circuit's decision in Jackson v. Sauls, that when an officer is observing only purely legal conduct, it cannot give rise to reasonable suspicion unless there is some nexus to a crime. So in Jackson, it was individuals traveling down the highway, and they broke no laws, and so the officers just had this broad hunch of suspicion. And this court further illustrated that concept in Jackson v. City of Atlanta, which we recognize came after the events of this case, so that case alone cannot clearly establish that. But it is that they relied on the Jackson v. Sauls case. And the second principle, Your Honor, in which the magistrate judge relied on in his report and recommendation, is that construing the video in the light most favorable to Metz, which is required at the motion to dismiss stage, it is clear that Officer Bridges became frustrated with Mr. Metz that he would not provide his ID and handcuffed him because he would not provide his ID. But merely refusing to provide your identification alone cannot give rise to reasonable suspicion, as the Supreme Court highlighted in Brown v. Texas and Hibble v. the 6th Judicial District Court of Nevada. And so, Your Honor, I see that my time has expired. If there are no other questions, I will yield to my co-counsel to address the illegal search. Thank you. Thank you. Mr. Moran, we'll hear from Ms. Neal. Good morning, Your Honors. Camden Neal for the apology, may it please the Court. I will be addressing Officer Dodson's unlawful search. The district court properly held that Officer Dodson is not entitled to qualified immunity for two reasons. First, Officer Dodson not only failed to argue that he lawfully arrested Mr. Metz, but he also failed to effectuate a lawful arrest. Second, the clearly established law dictates that no reasonable officer can believe that a search incident to arrest can occur in the absence of a lawful arrest. Your Honors, the name of the doctrine, search incident to arrest itself, dictates that a lawful arrest is required. The two follow one another. And so, Officer Dodson failed to properly argue at the district court and here before this court that he lawfully arrested Mr. Metz. Therefore, this issue is forfeited. I'm sorry. What is your clearly established law that there has to be a formal arrest? Yes, Your Honor. In United States v. Robinson, the Supreme Court outlined the search incident to arrest doctrine, which it said that a lawful arrest is required for a search incident to arrest. It didn't actually – well, of course, a lawful arrest is required for a search incident to arrest. A lawful arrest isn't required for a search. Well, Your Honors, the officer's principle position in this case is that they have – that probable cause alone is sufficient for a search incident to arrest. And a probable cause itself is not a lawful arrest. I know. But that doesn't mean that probable cause alone isn't sufficient for a search. What case do you have where there was probable cause acknowledged in the opinion and no formal arrest, but a search was held to be invalid because there was no formal arrest? Well, Your Honor, the Supreme Court has not made an explicit statement that probable cause is not a lawful arrest. Or we don't have any clearly established law. No, Your Honor, because we do have Knowles v. Iowa where the Supreme Court rejected an argument that probable cause alone was sufficient for a search incident to citation. And although that was not specifically – That wasn't the issue here. Well, Your Honor, they're arguing that a search incident to arrest can occur with probable cause alone. And in the Knowles v. Iowa case, they attempted to argue that a search incident to citation should be some sort of exception or an additional exception to the warrant requirement with a search incident to citation. And so that same principle carries here. There was no citation in this case. Correct, Your Honor. But there was an unlawful detention with no arrest, and there was a search. Can I ask you – so wasn't there an arrest here? So, I mean, in the sense that they put him in handcuffs, it seems like this went beyond a Terry stop. I mean, they held him for, I think, an hour, right? Something like that? Yes, Your Honor. He was detained for an hour. So why wasn't that an arrest? Yes, Your Honor. The Supreme Court has made clear first that handcuffs alone are not dispositive of an arrest. They've also said that time itself is not dispositive of an arrest. And so in the Montoya v. Ramirez case, there was a 24-hour detention in which it had not arisen from a brief seizure to an arrest because reasonable suspicion was not dispelled. And so, of course, our argument is that there was no reasonable suspicion. But the hour itself is not dispositive. We have the conversations of Officer Dodson stating that they've made a decisive conclusion. And our friends on the other side – What was the decisive conclusion? The issue of trespass warning, Judge Wilson, and to ban Mr. Metz from the DHR office. And so our friends on the other side point to some sort of unclear statement in the record – or in the video, excuse me – stating that, you know, there was possibly going to be an arrest or something like that. Well, it's not clear, and therefore, that's an ambiguity. And at the motion-to-dismiss stage, which the officers elected to bring this qualified immunity defense at the motion-to-dismiss, those ambiguities cannot be drawn in favor of the officer. That is contrary to the motion-to-dismiss stage. And again, Your Honors, the officers did not properly argue before this court or the district court that they arrested Officer Dodson. Going back to their principal argument, they say the probable cause alone is enough. Also, on reply – You don't have to make every argument in the district court they make here. Yes, Your Honor. The thing you forfeit are issues, not arguments. Yes, Your Honor. The officers still failed to make an argument before this court that Mr. Metz was lawfully arrested. Have the responsibility of correctly deciding the law and the case. Yes, Your Honor. And this court can affirm on any grounds supported by the record, and the record demonstrates that Mr. Metz was not under arrest. Again, going back to those factors, going back to the fact that – How long would they have had to keep him in handcuffs for him to be under arrest? Your Honor, I'm not exactly sure of a specific time. But again, going back to the fact that time itself is not dispositive. If time isn't dispositive and you're not sure and I'm not sure, how is that clearly established law? Because, Your Honors, Officer Dodson clearly did not believe that Mr. Metz was under arrest. It's not a subjective standard. Correct, Your Honor. But from an objective perspective, if a reasonable officer, knowing these facts and knowing these circumstances, they would not believe that Mr. Metz was under arrest. Even though you and I can't decide and don't know, and you can't sign a case that says how long the handcuffs would have had to have been on him for him to be under arrest. Well, Your Honor, again, the Supreme Court said in the Montoya Ramirez case that 24 hours was not enough. So that one hour clearly is on its own. They could have held this fellow there and said, keep this office open 23 more hours, and he still wouldn't have been under arrest. Your Honor, a reasonable officer knowing the facts and circumstances surrounding this, possibly not, Your Honor. Because a reasonable officer knowing the facts and circumstances, when Officer Dodson walked into the DHR and he saw Mr. Metz in handcuffs, he could have believed maybe at that point that Mr. Metz was under arrest. But Officer Dodson, for 16 additional minutes, engaged in a conversation with other officers about what they could do with Mr. Metz. What did they tell him? What did they tell Metz about whether or not he was arrested? They did not tell him that he was arrested, Your Honor. What did they tell him? They told him that they made a decisive conclusion to issue a trespass ban, and he had the woman from the DHR come up and explain that they no longer wanted Mr. Metz to be able to come to the DHR. So your argument is at that point he was free to go? Well, Your Honor, he was, of course, still in the handcuffs, but it was clear at that point that he was not going to be arrested. Okay. And at the point in which he was issued the trespass ban, Mr. Metz left. And because there was no lawful arrest, the search incident to arrest, which they, of course, did not properly argue before this Court, is unlawful. I see my time has expired. All right. Thank you. Thank you, Ms. Neal. Mr. Pike, you've reserved some time for rebuttal. Yes, Your Honor. I direct you to page 3 of the district court's opinion, where the district court writes, contrary to the defendant's position, the detention of Metz, which the defendants characterize as an arrest, and then she goes on. So to say we didn't raise an arrest before the district court flatly contradicts what the district court wrote in the opinion. Plus, Mr. Metz pled in the complaint that he was arrested. What did they tell him? They tell him you're arrested, we're taking you into custody and taking you downtown to jail? They didn't make a formal arrest announcement. He told him that you're getting banned. He didn't say nothing else is happening, and he couldn't execute the ban because you can't ban somebody if you don't know who they are. You have to document who they are so there's a record that there's been a ban. We couldn't get that far, so Officer Dodson said, well, they're disobeying lawful orders to identify. He didn't say it out loud, but it – So what does the record reflect, set aside what the district court said? Didn't the record reflect that they told him you're not going to be arrested, you're just going to get a trespass warning? No, Your Honor. They never said you're not going to be arrested. And in fact, even if he had, he would have been entitled to change his mind when the man won't cooperate. They told him you're going to get a trespass warning. They said that much, but they didn't say nothing more is happening, and he's perfectly entitled to change his mind when Metz disobeys these lawful orders to identify himself. They have the burden to identify case law that places these officers on notice. The only reason this man did not go to jail is because he threw up this phony First Amendment reference to Smith v. Cummings, and the police put on the brakes and try to comply with the First Amendment. They start calling supervisors and try to figure it out. And after Officer Dodson conducts a search to arrest a supervisor, says, cut him loose, we'll err on the side of caution. And now we're going to hold him responsible for a search that was lawful when conducted because they're trying to obey the Constitution. And the courts have to figure this out. I mean, this is not a simple First Amendment issue, okay? It's confusing. And so they're doing their best, but what they did was lawful, and the plaintiff has not cited a single controlling precedent that found a constitutional violation in circumstances like these. In fact, you asked for the best case. They gave you this Jackson v. Sauls where carloaded people were driving down the highway. The undercover Atlanta police see a Pontiac that looks like theirs and pull up beside it, and they say they look suspicious in the car. There's no traffic violation, and they come up and detain them in a parking lot. And that's supposed to put Officer Bridges on notice that he can't detain this guy who's filming in the D.H.R. that's a guarded lobby in response to a call for police help? That's not the way the clearly established standard works. DICTA can't clearly establish the law. Jackson v. City of Atlanta, this court said, you have to have a case that found a constitutional violation to clearly establish the law. They haven't pointed to a single case, and we ask the court to reverse the district court as to both officers and to grant qualified immunity. All right. Thank you, Mr. Pike. And I see Professor Travis Ramey at the council table from the University of Alabama Law School. You're doing a fantastic job with the students at the University of Alabama Law School. Thank you to Mr. Moran and Mr. Neal. The case was well argued. Thank you.